## William G. Dow *vs.* James W. Cheney.

Personal property, exempt from liability to attachment, was attached on mesne process in an action against the owner, who then agreed in writing with the plaintiff that it might be sold by auction on a certain day, but by reason of a second attachment the sale was postponed for several months, and until, the owner having meanwhile taken the benefit of the bankrupt act, it was prevented altogether by the claiming and taking of the property, by the assignee in bankruptcy, from the officer, in whose custody it had remained without any notice from the owner that he claimed it as exempt from attachment. *Held*, that the owner must be deemed to have waived his privilege of exemption, and could not maintain an action against the officer for a conversion of the property.

Tort against a deputy of the sheriff of Essex, for the conversion of a soda fountain, some ice-cream freezers and tin cans and some sugar.

At the trial in the superior court, before *Lord*, J., the plaintiff's evidence tended to show that the plaintiff was a confectioner, and the articles named in his declaration were tools and implements, or materials and stock, necessary for carrying on his trade or business, and were exempt from liability to attachment, under the Gen. Sts. *c.* 123, § 32, and *c.* 133, § 32, *cl.* 5, 6; that part of his implements and stock, but not these articles, were mortgaged to William W. Dow; that, on mesne process in an action by William W. Dow against the plaintiff, all the property in the plaintiff's shop, including these articles, was attached by the defendant and put into the custody of a keeper; and that thereupon, on August 9, 1867, the plaintiff and William W. Dow agreed in writing "that all the stock, tools, and all other articles taken upon a mortgage" from the plaintiff to William W Dow, "and also all of the stock not included in said mortgage, now attached upon mesne process upon a claim in favor of William W. Dow, may be sold at public auction on August 16, 1867."

The plaintiff's evidence tended further to show that, "four days after the first attachment, the defendant put on another attachment in favor of the firm of Southmayd & Co., and both of said attachments were upon valid claims;" that "the sale agreed upon was postponed after the second attachment, but

under what circumstances did not appear, except that the plaintiff testified that the second attachment prevented the sale;" that in December 1867, on a petition filed in October 1867, the plaintiff was adjudged a bankrupt, and John G. Case was appointed assignee of his estate in bankruptcy; that "the stock of goods in the shop was afterwards advertised and sold at auction, the mortgaged goods in the forenoon, and the unmortgaged goods, including the articles in question, in the afternoon of the same day;" and that "the plaintiff was informed by the mortgagee that the sale in the forenoon was by him, and the sale in the afternoon, the plaintiff thought, was by direction of the assignee."

"The judge, without calling upon the defendant to offer any evidence, ruled that 'if, after the attachment by the defendant of the stock, &c., on the writ in favor of William W. Dow, the plaintiff entered into the agreement dated August 9, 1867, without any objection that the attachment was of property exempt from attachment, and the shop of the plaintiff was kept closed, under the control of the defendant, until the plaintiff was adjudged a bankrupt and an assignee was duly appointed, and after such appointment the assignee took possession of all the attached property and dealt with it as such assignee, the defendant, if after the original attachment he did no act in relation to the property, and did not personally take possession of it except as above, is not liable in this action, even although the attachment included property exempt from attachment, unless at some time before the assignee took possession of the property the plaintiff notified the defendant that he claimed that the attachment covered property exempt from attachment.' Thereupon a verdict was rendered for the defendant, the plaintiff not claiming that under the ruling he was entitled to a verdict;" and the plaintiff alleged exceptions.

*C. Sewall,* for the plaintiff.

*J. C. Perkins,* for the defendant.

MORTON, J. At the trial, the plaintiff introduced evidence tending to show that the articles claimed in his writ were tools, implements and fixtures, and materials or stock, necessary for

carrying on his trade of a confectioner, and designed and pro-cured by him to be used therein; and the instructions given assumed that they were in whole or in part exempt from attach-ment, under the Gen. Sts. c. 123, § 32. The attachment by the defendant, and the control and dominion which he exercised over the property, to the exclusion of the rights of the plaintiff, were acts sufficient to constitute in law a conversion, without any demand and refusal. *Bowen* v. *Sanborn*, 1 Allen, 389. *Woods* v. *Keyes*, 14 Allen, 236. It follows, therefore, that the defendant is liable for the value of such of the attached prop-erty as was exempt from attachment, unless the plaintiff by his acts or neglect to act has waived his right of exemption.

The grounds relied on by the defendant to show such waiver are, that, soon after the attachment, the plaintiff and the attach-ing creditor, who was also mortgagee of a part of the attached property, entered into the written agreement of August 9, a copy of which is annexed to the bill of exceptions; that the plaintiff did not then claim that any of the property was exempt from attachment, and never thereafter, at any time before the assignee took possession of the property, notified the defendant that he claimed that the attachment covered property exempt from at-tachment. We are of opinion that these facts constitute in law a waiver. We cannot doubt that the parties intended, by the agreement, to authorize the sale of all the property attached, whether included in the mortgage or not. This agreement, en-tered into without any objection that the property was exempt from attachment, was an act of the plaintiff inconsistent with an intention on his part to claim it as exempt. We do not mean to express the opinion that this agreement standing by itself was an absolute waiver, so that after the contemplated sale was defeated by the second attachment and the agreement became *functus officio*, the plaintiff could not insist upon his privilege of exemption; but it was a qualified or limited waiver, and indicated a purpose on his part not to claim the exemption, and would reasonably and naturally induce in the mind of the officer a belief that the property was attachable. If the plain-tiff intended to claim the exemption, good faith and fair dealing

required that he should notify the officer of his claim, so that he might relieve the property claimed from the attachment, or protect himself by retaining it in his hands after the assignee was appointed, and until the title could be settled. The facts present a case where the plaintiff, by his voluntary acts and neglect to act, has misled the defendant to his prejudice, and must be held to be a waiver.

This case is distinguishable from the case of *Woods* v. *Keyes,* 14 Allen, 236, where the plaintiff did nothing which could mislead the officer or influence his action, but merely left him to act upon his own responsibility. It is more nearly analogous to the cases of *Nash* v. *Farrington,* 4 Allen, 157, and *Clapp* v. *Thomas,* 5 Allen, 158, in which the plaintiff, by his voluntary act of intermingling the exempted property with other property which was attachable, and neglecting to claim or point out the portion which was exempt, was held to have waived his privilege of exemption. *Exceptions overruled.*